Barkley E. SAMPLE, Plaintiff–Appellant,

v.

ALDI INC., Defendant–Appellee.

No. 94–2954.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1995.

Decided July 28, 1995.

Rehearing Denied Aug. 18, 1995.

Larry D. Drury, Chicago, IL, Robert A. Holstein, Aron D. Robinson (argued), Bruce J. Goodhart, Allyson Bouldon, Holstein, Mack & Klein, Chicago, IL, Ben Barnow, Alan Marc Goldberg, Albert Cueller, Barnow & Hefty, Chicago, IL, for plaintiff-appellant.

Mark E. Furlane (argued), Deena S. Newlander, Alan S. King, Gardner, Carton & Douglas, Chicago, IL, for defendant-appellee.

Before BAUER and MANION, Circuit Judges, and STIEHL, District Judge.*

BAUER, Circuit Judge.

Barkley E. Sample is a person of African ancestry. Sample was hired by Aldi Inc., in April 1990 as a district supervisor trainee in Aldi's Batavia, Illinois, division. Sample was promoted to district supervisor for the Batavia division in October 1990 following completion of his training. A district supervisor is responsible for the operation of between three to five Aldi food stores within one of Aldi's nine divisions. Sample was responsible for stores in Chicago as a district supervisor.

Aldi has two levels of management above the district supervisor positions. The first level is director positions for administration, store operations, purchasing, real estate, and warehousing. A district supervisor reports to a director of store operations. Aldi has a general manager position in each division above the director positions. A general manager is responsible for the overall operation of the division and reports to the president of Aldi. The general managers have exclusive authority with respect to the hiring and termination of district supervisors.

Director positions are filled by the promotion of district supervisors or the transfer of director-level employees within Aldi. A district supervisor is only eligible for promotion to a director position upon the recommendation of the general manager of his division. A district supervisor is promoted to director by the president of Aldi after consulting with the general manager who recommended the district supervisor and the general manager to whom the director will report.

Scott Kornegay was the general manager of the Batavia division while Sample was employed with Aldi. Greg Hofstetter was the director of store operations who supervised Sample as a district supervisor.

On October 2, 1991, Marc Umscheid, a white district supervisor in the Batavia division, was promoted to director of store operations in the division. Sample had been a district supervisor longer than Umscheid, yet Umscheid was the only district supervisor recommended for promotion by Kornegay. On December 31, 1991, Kim Karrick, another white district supervisor in the Batavia division, was promoted to director of administration in the division. Karrick also had less experience than Sample as a district supervisor, and Kornegay again did not recommend Sample for the promotion. Sample was fired by Kornegay on March 17, 1992.

Sample filed a charge of racial discrimination in employment with the Equal Employment Opportunity Commission ("EEOC") within 180 days of his termination as required by 42 U.S.C. § 2000e–5(e)(1). The EEOC declined to bring an action on Sample's behalf and issued Sample a right-to-sue letter.

Sample then filed this suit in the district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under 42 U.S.C. § 1981, on behalf of a class of past and present African–American Aldi employees "who are, have been, continue to be, or may in the future be" discriminated against by Aldi because of their race. Sample's individual claims alleged that Aldi's two failures to promote him and his termination were motivated by his race. The district court granted Aldi's motion to dismiss Sample's class allegations because Sample had failed to meet the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The district court granted summary judgment to Aldi on Sample's individual claims.

■■■■ We review the district court's grant of summary judgment *de novo,* applying the same standards as the district court. We view the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Sarsha*

---

* The Honorable William D. Stiehl of the United States District Court for the Southern District of Illinois is sitting by designation.

*v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). Summary judgment is appropriate if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sarsha,* 3 F.3d at 1038. If the non-moving party bears the burden of proof on an issue, however, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). We will affirm the judgment of the district court "only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict." *Sarsha,* 3 F.3d at 1038; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). A party is entitled to a directed verdict "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a)(1). Section 1981 of title 42 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens." This right includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

■ Sample can prevail on his Title VII and § 1981 claims in one of two ways. *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1472 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). Sample can meet his burden of proof by offering direct proof of discriminatory intent. *Id.* (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Sample has not chosen this evidentiary path and has instead relied on the indirect, burden-shifting method of proof first set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII cases, and also applicable to claims of racial discrimination under 42 U.S.C. § 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989).

■ Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of racial discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094–95; *see Hicks,* —— U.S. at ——, 113 S.Ct. at 2747. The *McDonnell Douglas* presumption places upon the defendant the burden of producing "evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2748. If the defendant meets this burden of production, the *McDonnell Douglas* presumption "drops from the case" and is no longer relevant. *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *see Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. The plaintiff then must prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. As the Supreme Court repeatedly stressed in *Hicks,* " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747

(quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

To establish a prima facie case of racial discrimination for failure to promote, Sample must show that (1) he is a member of a protected group; (2) he applied for and was qualified for the position sought; (3) Aldi rejected him for the position; and (4) Aldi granted the promotion to a person whose race was different than Sample's, but who had similar or lesser qualifications. *Von Zuckerstein,* 984 F.2d at 1472–73. To establish a prima facie case of racial discrimination for termination, Sample must show that (1) he is a member of a protected group; (2) he was doing his work well enough to meet Aldi's legitimate expectations; (3) he was discharged despite his performance; and (4) Aldi sought a replacement for him. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). Aldi may satisfy its burden of production under *McDonnell Douglas* without waiving its challenge to Sample's prima facie case. *E.g., Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138–39 (7th Cir.1994).

The district court held that Sample had failed to establish a prima facie case of discrimination for Aldi's two failures to promote him and for his termination. The district court concluded that Sample had failed to show that he was qualified for the promotions, and, with respect to his termination, that Sample had not shown that his performance was meeting Aldi's legitimate expectations. The district court also held that Sample had failed to create an issue of fact concerning whether Aldi's legitimate, nondiscriminatory reasons for its failures to promote him and for his termination were pretextual. Aldi asserts that the judgment of the district court should be affirmed on either ground. We do not address whether Sample has established a prima facie case because Aldi has met its burden of production under *McDonnell Douglas,* and we agree with the district court's conclusion that Sample has not created an issue of fact as to whether Aldi's reasons were pretextual. "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983).

Aldi has offered several legitimate, nondiscriminatory reasons why it twice failed to promote Sample and why Sample was fired. Before considering these reasons, it is important to recognize that Aldi has no specific guidelines or instructions with respect to a general manager's authority to fire a district supervisor or to recommend a district supervisor for promotion to director. Kornegay submitted an affidavit in the district court which states that the most important qualifications a district supervisor must possess to be recommended for promotion are leadership ability, professionalism, honesty and integrity, a good attitude toward work and superiors, and competent work performance. According to Kornegay's affidavit, merely performing the daily responsibilities of a district supervisor is insufficient to merit promotion.

The first incident upon which Aldi relies occurred in August 1990 during Sample's district supervisor training. Sample was working as a store manager in Kankakee, Illinois. Sample told Mike Jessen, his supervisor and a director of store operations, that the safe inside the store's office was locked. The safe was not locked. Sample testified in his deposition that he "hadn't completely spun the dial, so the safe was closed but technically not locked. He [Jessen] had asked me about it. I wasn't truthful about it." Sample later admitted to Jessen that he had lied about the safe, and Jessen informed Kornegay. Kornegay confronted Sample and told Sample that he expected the integrity and honesty of any district supervisor to be "above question," and that any future problem with his integrity would result in his termination. Sample's store management training was extended by Kornegay for approximately four additional weeks after this incident.

The second incident also occurred during Sample's district supervisor training in the Kankakee store. Kornegay arrived at the store and found Sample working in the cooler with the door open. Under Aldi policy, the

cooler door was not to remain open for extended periods of time. Sample told Kornegay that he had just opened the door. A store employee later told Kornegay that the door had been open for at least two hours.

Aldi next asserts that Sample demonstrated a lack of professionalism after he had been promoted to district supervisor. Aldi contends that Sample arrived late to work, failed to wear proper business attire, and failed to report to work cleanly shaven. Sample was counseled by Hofstetter on more than one occasion concerning these deficiencies, and Hofstetter informed Kornegay. Kornegay's affidavit states that he did not recommend Sample for the Umscheid promotion because of the safe incident and Sample's lack of professionalism as a district supervisor.

■ To survive summary judgment, Sample was required to produce evidence that created an issue of fact as to whether these nondiscriminatory reasons were pretextual. *E.g., Russell v. Acme–Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995). In other words, Sample must create an issue as to "whether the employer honestly believes in the reasons it offers," not whether Aldi made a bad decision. *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994) (citation and internal quotation marks omitted). If at least one reason remains unquestioned which, standing alone, would have caused Aldi to take the challenged action, then summary judgment was proper. *See Russell,* 51 F.3d at 69.

Sample has not met his burden with respect to the safe incident. Sample admits that the incident occurred and that he lied to Jessen. Sample argues that this reason was pretextual because Aldi subsequently promoted him to district supervisor. What Sample ignores is that his training was extended by approximately four weeks because of the incident, and, more importantly, that Kornegay perceived the incident as reflecting a lack of integrity on Sample's part which made him unqualified for promotion to director. Although Sample believes that the incident was insignificant, to survive summary judgment he must call into question the honesty of Kornegay's belief that it was sig-

nificant. *Russell,* 51 F.3d at 69; *Rand,* 42 F.3d at 1145. He has not done so.

Sample asserts that the cooler incident was a pretext because he was not disciplined or fired after the incident even though Kornegay had informed him after the safe incident that any future problems with his integrity would result in his termination. Sample's position essentially is that Aldi committed racial discrimination because it did not fire him at the first opportunity. Sample also points out that neither the safe incident nor the cooler incident was documented in his personnel file. So what? Sample does not dispute that these incidents occurred, and he has not created an issue of fact as to whether either incident undermined Kornegay's confidence in his integrity.

■ We turn to Sample's claimed lack of professionalism as a district supervisor. Sample admits in his deposition that he did not arrive at his stores on time at 8:00 a.m. on occasion, and that Hofstetter mentioned this to him prior to the Umscheid promotion. Sample also admits that he was late for a meeting with Hofstetter after the Umscheid promotion in November 1991. Sample's affidavit states in conclusory fashion that other district supervisors were late for monthly district supervisor meetings without being reprimanded, terminated, or considered unqualified for promotion. Sample has not identified or deposed these district supervisors, and the conclusory statements in his affidavit do not create an issue of fact. *See* Fed.R.Civ.P. 56(e); *Russell,* 51 F.3d at 69.

Sample states in his affidavit that he wore a suit coat to work every day except once when he was wearing a winter ski jacket. Sample admits that he typically did not wear a suit coat while working in his stores and often left it in his car or in the store office. Sample asserts that Hofstetter rarely wore a suit coat in the stores and was not fired or passed over for promotion. Sample asserts that he shaved his face regularly and denies that he ever came to work without being cleanly shaven. Sample's affidavit also states, however, that his rate of facial hair growth was slow while he was working for Aldi, and he only shaved every second or third day. Sample contends that Aldi has no

policy regarding shaving. Sample also asserts that his store managers had "five o'clock shadow" on occasion without being reprimanded by Kornegay or Hofstetter.

Sample has failed to create an issue of fact as to whether Kornegay's perceived deficiencies in his dress and grooming were pretextual. Sample admits that he did not wear a suit coat in his stores. The only other Aldi employee identified by Sample who did not do so was Hofstetter, and Hofstetter was not a district supervisor. With respect to Sample's grooming, Kornegay testified in his deposition that "[a]ll employees in my division are required to be clean shaven." Sample did not shave for two or three days at a time. Although his store managers may have had "five o'clock shadow," these employees were supervised by Sample, not Kornegay, and "five o'clock shadow" is not two or three days' growth. Even if Sample did have a slow facial hair growth rate, moreover, he has not shown that Kornegay did not honestly believe that his appearance rendered him unqualified to be a director.

The next incident upon which Aldi relies occurred on October 2, 1991. Sample became visibly upset during a meeting of district supervisors after the Umscheid promotion was announced. Kornegay and Hofstetter met with Sample privately to discuss the promotion. According to Kornegay's affidavit, Sample challenged Kornegay's promotion decision in a heated and belligerent manner. No other Aldi employee had ever confronted Kornegay in such a manner, and Kornegay considered Sample's behavior to be insubordinate and unacceptable for a district supervisor or director. Kornegay did not recommend Sample for the Karrick promotion because of this incident as well as the safe incident and Sample's lack of professionalism.

Although Sample denies that he had a belligerent attitude during the meeting, Sample admits in his deposition that the discussion was "heated," he "challenged" Kornegay, he believed that he "got under [Kornegay's] skin," and Kornegay "doesn't take kindly to being challenged." Sample has not shown that an issue exists as to whether Kornegay honestly believed that this behav-

ior rendered him unfit for the Karrick promotion; Sample was indeed fortunate to remain a district supervisor after the meeting.

The remaining incidents cited by Aldi occurred after the Karrick promotion and led to Sample's discharge. Sample attended a meeting of district supervisors on March 10, 1992. According to Kornegay's affidavit, Sample sat through the entire meeting in a defiant and arrogant posture, with his hands behind his head, and, unlike the other district supervisors in attendance, took no notes. Sample denies in his affidavit that he sat with his hands behind his head during the entire meeting because he passed along handouts distributed during the meeting and because he took "brief notes" on the back of one of the handouts.

District supervisors were required to convey the information from the meeting to their store managers. A few days after the meeting, Hofstetter was informed by Sample's store managers that Sample had not conveyed to them any information from the meeting. Sample denies this, but in his deposition he testified that he conveyed only four items of information to his managers on March 17 after Hofstetter specifically requested him to do so. Sample asserts that he had conveyed the information to his managers before the meeting because none of the information discussed was new. It is undisputed, however, that at least one item discussed at the meeting, a cash pick-up policy, was new to Sample.

One of Sample's stores was robbed on March 3 or 4, 1992. On March 12, Kornegay observed a "gaping hole" in the roof of the store which was probably the point of entry for the robbery. Sample did not discover the hole until March 12 but contends that he brought it to Kornegay's attention first. Kornegay was amazed that Sample failed to discover the hole earlier.

On March 13, 1992, an angry customer called Aldi's corporate office to complain that one of Sample's stores was not yet open fifteen minutes after the store's opening time. The corporate office called the store and was informed that Sample was performing a cash audit and would not open the store

until he completed the audit. His patience exhausted, Kornegay fired Sample on March 17.

Sample has not created an issue of fact that Kornegay's reasons for firing him were pretextual. With respect to the March 10 meeting, it is undisputed that Sample sat in an arrogant posture for at least a portion of the meeting and took at most only brief notes. Sample did not convey any information from the meeting until Hofstetter requested him to do so. Although the information from the meeting may have been stale—and at least one item was not—Sample has not shown that Aldi did not want him to repeat it to his managers. Sample asserts that robbery incident was a pretext because neither the Chicago Police Department nor the store manager, who was present in the store regularly, discovered the hole. Maybe so, but Sample was in the store four times between the robbery and March 12, and Kornegay could have reasonably concluded that Sample should have noticed the hole earlier than he did.

Sample asserts that he did not open the store on time on March 13 because under Aldi's policy, cash audits were to be performed in the morning before the store opened. Sample states that the balance of cash did not match the previous night's audit, and he had to recount the contents of the entire safe to find the problem. In Kornegay's view, Sample exercised poor judgment by keeping the store closed. Kornegay believed that Sample should have been at the store early enough to perform the audit (Sample's starting time was 8:00 a.m. and the store opened at 10:00 a.m.), and, if the cash was not balanced by the opening time, then Sample could have easily counted out a drawer of cash for a cashier and opened the store. Sample has offered nothing which casts doubt on Kornegay's assessment.

■■■ Sample relies on statistical evidence which he contends demonstrates that Aldi has terminated a disproportionate num-ber of African–American district supervisors and trainees.[1] This evidence does not assist Sample's individual claims because Sample has not shown any link between this alleged discrimination and the employment decisions which Sample is challenging. *See Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1004 (7th Cir.) (a showing of other instances of discrimination by an employer is no substitute for a showing of injury to the plaintiff), *cert. denied,* —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994).

■■■ This court does "not sit as a super-personnel department that reexamines an entity's business decisions." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992) (citation and internal quotation marks omitted). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere." *Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d 557, 560 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Sample has not shown that a reasonable jury could conclude that Aldi's stated reasons for his discharge were pretextual. And we will not second-guess Kornegay's decision that the accumulation of incidents in such a short period of time, combined with Sample's earlier deficiencies, compelled his termination.

■■■ Sample also challenges the district court's dismissal of the class allegations of his complaint. Because the district court properly granted summary judgment to Aldi on Sample's individual claims, Sample cannot represent a class. "To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class," and "possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706

---

1. At oral argument Sample's counsel asserted that the case should be remanded because the district court abused its discretion in denying Sample's discovery requests for additional employment data from Aldi. This argument was raised for the first time at oral argument and therefore has been waived. *Quinn v. Neal,* 998 F.2d 526, 530 n. 4 (7th Cir.1993); *United States v. Rodriguez,* 888 F.2d 519, 524 (7th Cir.1989).

(1974); *see Chambers,* 17 F.3d at 1006. Sample does not.

\* \* \* \* \* \*

Sample was a marginal employee for whom Aldi exhibited an extraordinary amount of patience. Title VII and 42 U.S.C. § 1981 do not protect Sample from the consequences of his own performance. Rather the statutes, as relevant here, only prohibit racial discrimination in employment. Sample has not shown that a reasonable jury could conclude that Aldi committed such discrimination, and the judgment of the district court is therefore

AFFIRMED.