73 F.3d 365
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Rudolph WATSON, Plaintiff-Appellant,
v.
ELECTRO-MOTIVE DIVISION OF GENERAL MOTORS CORPORATION,
Defendant-Appellee.
 No. 94-3563.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 18, 1995.*
Decided Jan. 4, 1996.
 
 Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 On appeal from the district court's dismissal of his employment discrimination suit, Rudolph Watson argues that the district court abused its discretion by refusing to allow Watson to amend his complaint and that the district court erred by entering judgment in favor of defendant. Because Watson is proceeding pro se, we will construe his papers liberally. Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir.1994).
 
 I. Background
 
 2
 Rudolph Watson is an African-American. He served as a Quality Control Inspector for Army Vehicles from December, 1945, until August, 1946. He applied for a job with Electro-Motive Division of General Motors (EMD) in April, 1946 and in May, 1948. Watson contends that at that time, black employees of EMD told Watson that EMD would not hire him unless he stated on his application that he would accept any position. Watson followed their advice and was hired by EMD in June, 1948, as a Bench Assembler. After being assigned to a number of other positions within the division, Watson was promoted to Inspector Machine Parts on May 13, 1970.
 
 
 3
 Watson claims that from 1948 until he was finally promoted in 1970, he repeatedly applied for the position of Mechanical Inspector but was denied the promotion because of his race. The first documentary evidence of a complaint from Watson is in March, 1969, when he filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging employment discrimination:
 
 
 4
 For the past 16 years, I have been qualified for an inspection job. I applied in the two years after diesel mechanical school in 1952 and 1953. In July of 1968, I applied for the job of inspection and was told that there were no openings. In December, 1968 there were two white men hired as inspectors. I feel that I should have been promoted to inspection in December, and the only reason I was not is because I am a Negro.
 
 
 5
 Tr. 811. The EEOC determined that race was not a factor in EMD's decision not to promote him. Report of the Special Master at 2.
 
 
 6
 Watson then alleges that he applied for a second promotion to electrical inspection but was denied because of his race. Watson's account of when he applied for this promotion varies from sometime in 1969 to 1973. He did not file a charge with the EEOC regarding this second promotion. EMD contends that the electrician inspection position would have represented a demotion for Watson, decreasing his 1970 hourly pay from $4.45 to $4.36. Watson held the position of Mechanical Inspector until July 1, 1980, when he retired.
 
 
 7
 In 1975, Watson joined a class action lawsuit against EMD alleging racial discrimination. The third amended complaint, filed in November, 1978, alleged:
 
 
 8
 Plaintiff Rudolph Watson was hired and assigned to a "grinder" position at a time when Caucasians with lesser qualifications were employed and assigned to cleaner and higher-paying classifications.
 
 
 9
 When the class action lawsuit settled, Watson chose not to participate in the settlement agreement.
 
 
 10
 EMD searched its personnel files and found no record that Watson applied for the position of Electrical Inspector. Although Watson claims that he filed a grievance with his union that he was denied the position of Electrical Inspector because of his race, he produced no documentary evidence demonstrating that he had applied for the position and that he had filed a grievance complaint with his union. The Special Master assigned to the case recommended that Watson's claims be dismissed, concluding that his claims were time-barred; not actionable; and, alternatively, not supported by credible evidence. The district court adopted the Special Master's recommendation, and Watson now appeals.
 
 II. Analysis
 
 11
 The Special Master held a hearing at which Watson testified that EMD discriminated against him because of his race by assigning him to the position of a grinder when he began working for EMD in 1948, by denying him a promotion from 1948 until 1970, and by denying him a second promotion to Electrical Inspector in 1973. Although Watson did not specifically allege each of these claims in his pleadings, EMD did not object to Watson's testimony during the hearing. Thus, we deem the pleadings to be amended to conform to the evidence. Fed.R.Civ.P. 15(b).
 
 
 12
 Watson first alleges that EMD discriminated against him by assigning him to the position of grinder when he began working for EMD in 1948 and that less qualified Caucasian workers received better jobs than he. However, because these incidents took place before Title VII was enacted, Title VII does not provide a basis for relief. See Patterson v. General Motors Corp., 631 F.2d 476, 484 (7th Cir.1980), cert. denied, 451 U.S. 914 (1981) (plaintiff has no cause of action under Title VII for allegedly discriminatory acts that occurred before the effective date of Title VII).
 
 
 13
 We next consider Watson's claim that he was denied a promotion from Mechanical Inspector to Electrical Inspector in 1973. The special master dismissed this claim because Watson did not demonstrate that he was denied an opportunity to enter into a new distinct relationship with EMD. See Patterson v. McLean Credit Union, 491 U.S. 164, 185, 109 S.Ct. 2363, 2377 (1989) (failure to promote claims are actionable under Sec. 1981 only when the promotion would have resulted in a "new and distinct relation between the employee and the employer.").
 
 
 14
 Watson offered no proof that an electrical inspector position held increased pay, prestige, benefits, or responsibilities. Furthermore, EMD witnesses testified that an electrical inspector's hourly pay was less than what Watson earned as a mechanical inspector. Under these circumstances, the district court properly dismissed Watson's 1973 promotion claim under Patterson. See Jones v. Merchants National Bank & Trust Co., 42 F.3d 1054, 1059 (7th Cir.1994) (mere conclusory assertions regarding the changes a promotion would have entailed held insufficient to demonstrate that plaintiff had the opportunity to enter a new and distinct contractual relationship).
 
 
 15
 Finally, Watson argues that EMD refused to promote him to mechanical inspector in 1968 because of his race, and that two Caucasian men were hired for the position. To demonstrate discrimination, Watson can either meet his burden of proof by offering direct proof of discriminatory intent, or by relying on the "indirect, burden-shifting method of proof" as described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Sample v. ALDI, Inc., 61 F.3d 544, 547 (7th Cir1995). Watson did not attempt the former, so we will analyze his claim through the McDonnell Douglas framework.
 
 
 16
 Under McDonnell Douglas, an employee must first establish a prima facie case of racial discrimination by a preponderance of the evidence. Id. Establishment of a prima facie case creates a rebuttable presumption of discrimination, overcome by evidence by the employer of a nondiscriminatory reason for the adverse action. Id. The presumption then drops from the case, and the employee must prove that the neutral reason was pretextual. Id. To establish a prima facie case of racial discrimination for failure to promote, an employee must show that (1) he is a member of a protected class, (2) he applied for and was qualified for the position sought, (3) the employer rejected him for the position, and (4) the employer granted the promotion to a person whose race was different from the plaintiff but who had similar or lesser qualifications. Id. at 548.
 
 
 17
 Watson failed to establish a prima facie case because he was unable to demonstrate that the position was filled by lesser or similarly qualified Caucasian workers. First, Watson admitted that he did not know the factors by which EMD evaluated a worker's qualifications and that he could not prove that race was a factor. Tr. at 818-19. Second, Watson made no showing that the workers who were promoted were less qualified. Third, Watson testified that he had no reason to dispute the EEOC finding that three African-American and two Hispanic workers were hired in 1969. Tr. at 816, 818. Finally, EMD had disciplined Watson in 1964 and 1966 for violating a shop rule against loitering during business hours. Tr. at 815. Thus, Watson was deemed less qualified because EMD perceived that he had a tendency to waste time.
 
 
 18
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record