77 F.3d 485
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LARRY E. WEBB CONSTRUCTION COMPANY, Plaintiff-Appellant,
v.
MILLER PARTNERSHIP L.P., Restoration Management Corporation,
Schroeder Murchie Laya Associates, Limited, et
al., Defendants-Appellees.
 No. 95-1895.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 8, 1995.
Decided Feb. 21, 1996.
 
 Before WOOD, Jr., FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 In its first amended complaint, Larry E. Webb Construction Company ("Webb"), a minority-owned enterprise, alleged that the defendants, Miller Partnership L.P., Restoration Management Corporation, Schroeder Murchie Laya Associates, Limited, et al. (collectively, "Miller") impinged upon its ability to make and enforce contracts in violation of 42 U.S.C. § 1981. Webb's complaint also included several state law claims. The district court granted Miller's motion for summary judgment on Webb's § 1981 claim, and declined to exercise jurisdiction over Webb's state law claims, after concluding that Webb had failed to produce sufficient evidence that Miller's proffered reasons for terminating the contract were pretextual. For the reasons discussed below, we affirm.
 
 I. BACKGROUND[1]
 
 2
 On November 25, 1991, Webb entered into a contract with Miller Partnership L.P. The contract, which superseded a preliminary agreement between the parties, provided that Webb would construct a Community Center at the Lakeshore Dunes Apartment Complex, which was then owned by Miller Partnership L.P. The construction of the Community Center was one phase in a larger renovation project underway at the apartment complex. The contract specified a substantial completion date of March 1, 1992, subject to authorized adjustments.
 
 
 3
 Soon after work under the contract began, a dispute arose between Webb and James Jansen, who was vice-president of construction for Miller Partnership L.P. and general manager of construction for Restoration Management Corporation, the entity retained by Miller Partnership L.P. to manage the renovation of the apartment complex. Jansen supervised the work of the contractors and subcontractors on the project. Assisting him in his supervision were Marilyn Krusas, the property manager of the apartment complex, and Richard Laya, the architect on the project.
 
 
 4
 The dispute between Webb and Jansen largely involved the quality and timeliness of Webb's work. In general, Jansen and Laya repeatedly complained to Webb about problems with the door frames, electrical outlets, light switches, telephone jack outlets, windows, drywall, bathroom tile and draincovers, drop ceiling, roof, and recessed lighting fixtures. Webb was unable to resolve these complaints and the November 25, 1991 contract was eventually terminated. Miller alleges that it hired another minority-owned construction company, Smith & Sons, to correct and complete Webb's work.[2]
 
 II. STANDARD OF REVIEW
 
 5
 We review the district court's grant of summary judgment by considering all factual inferences in the light most favorable to the nonmoving party (herein Webb) and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 567 (7th Cir.1989) (citations omitted).
 
 
 6
 If the nonmovant bears the burden of proof on an issue, the nonmovant may not rest on its pleadings but must produce specific facts that show that there is a genuine issue of material fact. Randle, 876 F.2d at 567 (citation omitted). Where summary judgment has been granted in a discrimination case, however, our review is to be approached with "special caution" as intent and credibility are usually crucial issues. McMillian v. Svetanoff, 878 F.2d 186, 188 (7th Cir.1989) (citations omitted).
 
 III. DISCUSSION
 
 7
 Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This right "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).
 
 
 8
 In order to prevail on its § 1981 claim, Webb must ultimately prove that it was the victim of intentional discrimination. E.g., Randle, 876 F.2d at 568. There are two methods of proof available to a plaintiff in this regard. First, the plaintiff may allege that direct evidence establishes discrimination on the part of the defendant. Id. at 569. Alternatively, the plaintiff may proceed under the indirect, burden-shifting method of proof first articulated for use in Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later adapted for use in § 1981 cases. In this case, Webb seeks to proceed under both methods.
 
 A. Direct Evidence
 
 9
 Webb first argues that the affidavit testimony of Rozelle Manning, a security guard at the apartment complex, provides direct evidence of discrimination by Miller. Manning testified that he was instructed to take note of the comings and goings of Webb's subcontractors and employees; Manning was not, however, told to keep track of the white contractors' employees. Webb argues that this shows that Miller discriminated against Webb by treating it differently than the white contractors.
 
 
 10
 We disagree. The record is replete with evidence of Miller's dissatisfaction with the timeliness of Webb's work. Miller's fears proved to be well-founded as the record shows that Webb had failed to finish its work as of the contract's deadline. Therefore, as Miller has argued, it is not surprising that an effort was made to keep track of the time that Webb devoted to the project.
 
 
 11
 While the record does show that Webb was treated differently than the white contractors, we conclude that no material question of fact exists regarding the motivation behind this differential treatment. The record adequately demonstrates that Miller was dissatisfied with the quality and timeliness of Webb's work--not Webb's race.
 
 B. McDonnell Douglas
 
 12
 Webb also seeks to proceed under McDonnell Douglas 's indirect, burden-shifting method of proof. At the first stage of this method, the burden rests upon the plaintiff to establish the four elements of a prima facie case of discrimination. In a case involving an alleged discriminatory contract termination, such as this one, the plaintiff must show that (1) he was a member of the protected class; (2) he was performing well enough to meet his contractual obligations; (3) in spite of his adequate performance, the contract was terminated; and (4) the plaintiff was replaced by someone who was not within the protected class. E.g., Pilditch v. Board of Educ. of the City of Chicago, 3 F.3d 1113, 1116 (7th Cir.1993) (citations omitted), cert. denied, 114 S.Ct. 1065 (1994).
 
 
 13
 The plaintiff's establishment of a prima facie case creates a rebuttable presumption of discrimination. McMillian, 878 F.2d at 189 (citations omitted). The burden of production[3] then shifts to the defendant to articulate a legitimate and nondiscriminatory reason for the termination of the contract. Id. If the defendant is able to dissolve the presumption of discrimination in this fashion, the burden then shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's proffered reasons are pretextual. Id. There are two methods of showing pretext: "Pretext may be established directly with evidence that [the defendant] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the [defendant's] explanation is not credible." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039 (7th Cir.1993) (citations omitted).
 
 
 14
 In its brief before this court, Miller contests Webb's prima facie case on two grounds. First, Miller asserts that it could not have discriminated against Webb on the basis of race as the firm that replaced Webb was also owned by African Americans. Second, Miller argues that Webb's performance fell far short of its contractual obligations. In addition, Miller has proffered several reasons for its termination of Webb's contract, in the event that it is determined that Webb has established its prima facie case.
 
 
 15
 Miller did not, however, raise these challenges to Webb's prima facie case before the district court. In support of its summary judgment motion, Miller almost exclusively concentrated on Webb's failure to compare its experience with that of specific white individuals who had allegedly received preferential treatment. The district court characterized this challenge as "perfunctor[y]," and it therefore proceeded to discuss the reasons proffered by Miller for the termination of Webb's contract. This approach, under these circumstances, is sound: " 'Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.' " Sample v. Aldi Inc., 61 F.3d 544, 548 (7th Cir.1995) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). We, too, will assume arguendo that Webb has met its prima facie case. Therefore, we must now determine whether Webb has managed to raise any doubts about Miller's proffered reasons for terminating the contract.
 
 
 16
 Miller has essentially proffered three reasons for the termination of Webb's contract: (1) Webb's workmanship was poor; (2) Webb's work was untimely; and (3) Larry Webb, the majority owner of Webb, was difficult to work with. On their face, these reasons are legitimate and nondiscriminatory and thus sufficient to dissolve the presumption of discrimination created by Webb's prima facie case. Consequently, Webb must raise an issue of material fact as to each of these reasons or suffer the affirmance of the district court's order. See Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir.1995) ("The fact that some of these reasons were successfully called into question by [the plaintiff's] deposition or affidavit does not defeat summary judgment if at least one reason for [the adverse action] stands unquestioned."). Webb may still prevail, however, even if it does fail to cast doubt upon all of Miller's proffered reasons: "There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." Id. at 70.
 
 
 17
 Miller first argues that the contract's termination was driven by the poor quality of Webb's work. In response, Webb has primarily relied upon the testimony of its own employees and subcontractors to argue that its work was satisfactory and in conformity with the project's blueprints. Webb, in other words, has attempted to demonstrate that Miller's complaints are simply wrong. In so doing, Webb has missed the point. It is not sufficient for Webb to demonstrate that Miller was mistaken or that Miller exercised poor judgment by terminating the contract; Webb must raise an issue of material fact as to whether Miller honestly believes in its proffered reason. McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992) (citations omitted). In light of the extensive nature of the record regarding Miller's dissatisfaction with Webb's work, we conclude that there is no question of material fact as to this reason. In response to Miller's second proffered reason, untimeliness, Webb argues that the substantial completion deadline was extended to March 27, 1992. Webb admits, however, that it had not yet completed its work under the contract as of April 4, 1992. Webb offers no evidence to counter Miller's third proffered reason, the allegedly difficult nature of Larry Webb.
 
 
 18
 Therefore, we conclude that Webb has failed to raise an issue of material fact regarding any of the reasons proffered by Miller for the contract's termination. Webb can offer nothing but its own belief that Miller was motivated by discrimination. "Mere subjective beliefs by the plaintiff--without the backing of hard evidence--cannot prove that an action was inspired by improper motivations." Pilditch, 3 F.3d at 1119 (citation omitted).
 
 
 19
 We have also considered Webb's other arguments and found them to be without merit.
 
 IV. CONCLUSION
 
 20
 For the reasons discussed above, we affirm the decision of the district court.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 We note that Webb has violated the spirit, if not the letter, of Circuit Rule 28(d)(1) by riddling its statement of the facts with argument and comment. See, e.g., Appellant's Brief at 15 ("[Krusas's] statement that the 'drywall was poorly installed' reflects her ignorance of the subject...."); 22 ("Laya's statement ... that '[o]verall, all the work done [by Webb] was of poor workmanship and incomplete,'.... is a clear indictment of Laya's own professional competence...."); and 24 ("Laya ... knowingly surrendered his professional responsibility as a [sic] architect ... to facilitate the disPara.te [sic] and discrimninatory [sic] treatment accorded [Webb]...."). We trust that the attorney for the appellant will corral his polemic streak the next time he finds himself before this court
 
 
 [2]
 Although Webb does not dispute that Smith & Sons completed its work under the contract, the record does reveal a discrepancy in this regard: The total payment agreed to under the November 25, 1991 contract exceeds, by more than $40,000, the total payments made to Webb and to Smith & Sons under the contract. The record is silent as to whether another contractor completed this portion of the contract's total, or whether this amount was deleted from the contract by Miller
 
 
 [3]
 The burden of proof, however, always remains with the plaintiff