Annie BURTON, Plaintiff,

v.

CNA INSURANCE COMPANY,
Defendant.

No. 94 C 5928.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 25, 1997.

Lawrence J. Stark, Stone, Pogrund, Korey & Spagat, Chicago, IL, for Annie Burton.

Annie Burton, Chicago, IL, pro se.

Jeffrey S. Goldman, Michael Lawrence Sullivan, Fox and Grove, Chartered, Chicago, IL, for CNA Ins. Companies.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Annie Burton, brought suit against the defendant, CNA Insurance Company ("CNA"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Both parties move for summary judgment. For the following reasons, Ms. Burton's motion for summary judgment is denied and CNA's motion for summary judgment is granted.[1]

---

1. Ms. Burton's response to CNA's motion for summary judgment was originally due on February 7, 1997. I granted Ms. Burton an extension of time to respond until March 21, 1997. On that date, Ms. Burton filed her own motion for summary judgment, but did not respond to CNA's motion for summary judgment. I again granted Ms. Burton an extension of time to re-

### Background

Ms. Burton, an African–American woman, was hired by CNA as a Clerk Typist II (secretary) in June, 1981. In 1984, Ms. Burton was promoted to a position in the word processing department. Ms. Burton worked in the word processing department until 1994, when her position was eliminated in a corporate reorganization. Ms. Burton filed an Equal Employment Opportunity Commission charge in April, 1993. In that charge and in her claim before this court, Ms. Burton alleges she was discriminated against in promotion decisions that occurred at CNA in 1992 and 1993.

Specifically, Ms. Burton alleges that Paul Warner, her manager at CNA, and Sharon Host, her supervisor at CNA, did not allow her to "post" for positions as an underwriting trainee, underwriting technician, and pricing reserving analyst.[2] It appears that Ms. Burton did, in fact, apply for promotions, but was never promoted.

### Title VII Claim

■ Ms. Burton claims CNA violated Title VII by discriminating against her on the basis of her race, color, and sex. The Supreme Court has created a three-part, burden-shifting analysis to examine Title VII claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Sample v. Aldi Inc.*, 61 F.3d 544 (7th Cir.1995). In the failure-to-promote context, the plaintiff must first establish a prima facie case of discrimination by showing: (1) she belongs to some protected class, (2) she applied for and was qualified for the position, and (3) she suffered an adverse employment action. *Sample*, 61 F.3d at 548.[3] If the plaintiff makes out a prima facie case of discrimination, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir.1994). Should the employer meet the burden of showing nondiscriminatory reasons for the plaintiff's rejection, the burden shifts back to the plaintiff to show the employer's explanation is simply a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825; *Lenoir*, 13 F.3d at 1133.

■ Ms. Burton has not made out a prima facie case of discrimination because she can not prove she was qualified for the positions she sought. Ms. Burton's job performance history at CNA was poor. CNA has yearly reviews for their employees. Employees are rated on a five degree, highest to lowest, coded scale: (1) Outstanding, (2) Superior, (3) Competent, (4) Needs Improvement, and (5) Unsatisfactory. CNA has provided Ms. Burton's work performance records from 1986 to the time of her termination. In 1986, Ms. Burton was evaluated by Barbara Howard and Beverly Stephenson, both African–American women. Ms. Burton received an overall rating of "Needs Improvement" and was placed on a "60–Day Action Plan," a quasi-probationary period in which Ms. Burton was required to improve her work performance or face further disciplinary action. (Def.Ex. 30). Ms. Burton met the terms of the "Action Plan" and her performance was rated as "Competent" at the end of the sixty day period.

In 1987, 1988, and 1989, Ms. Burton was again evaluated by Ms. Howard and received

---

spond to CNA's motion until August 29, 1997. On August 30, 1997, Ms. Burton requested another extension of time. I granted Ms. Burton an extension to respond until September 19, 1997. Ms. Burton never filed a response to CNA's motion for summary judgment. Accordingly, Ms. Burton's motion for summary judgment will be considered her response to CNA's motion for summary judgment.

**2.** To "post" for a promotion simply means to fill out an application for the position.

**3.** Until recently, it was also a prong of the prima facie case that a plaintiff show her employer treated similarly-situated employees outside her classification more favorably. This criterion has been disavowed by recent Seventh Circuit decisions. *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 793 (7th Cir.1997) (finding plaintiff need not show that her employer treated employees outside her class more favorably, but that she must show "there is some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion.") (citations omitted).

overall performance ratings of "Competent." Among individual categories, Ms. Burton received some ratings of "Needs Improvement" and one rating of "Unsatisfactory" in an evaluation of her dependability. Ms. Burton's 1989 review noted that "very little confidence can be placed in Annie to carry out her day to day activities," and that "[s]he continues to be argumentative and questions all decisions made." (Def. Ex. 24, at 216, 217).

In January, 1990, Ms. Burton was placed on another "60–Day Action Plan" due to an excessive amount of absences and unacceptable tardiness which compromised her dependability. This decision was made by Claudia Woods, Ms. Burton's supervisor and an African–American woman. Ms. Burton successfully completed the "Action Plan" in March, 1990, and her job performance evaluation was moved from "Needs Improvement" to "Competent." Ms. Burton, however, continued to have problems with work attendance and dependability. In June, 1990, Ms. Woods and Dorothy Liggons, Ms. Burton's new manager and an African–American woman, lowered Ms. Burton's work rating to "Unsatisfactory" and placed her on a 60–day probationary period. Ms. Burton was warned that further attendance problems could result in termination. (Def.Ex. 20).

Ms. Burton satisfactorily completed her probationary period and her job performance status was returned to "Competent" in August, 1990. Ms. Burton was able to maintain this level of work throughout 1990 and received a year-end job evaluation of "Competent," including a rating of "Superior" in the quality of her work.

In November, 1991, Ms. Burton was evaluated by Ms. Woods and a new manager, Pamela Gates, an African–American woman. Ms. Burton received an overall performance rating of "Needs Improvement," and received numerous ratings of "Needs Improvement" and "Unsatisfactory" in individual evaluation categories. Again, Ms. Burton was placed on a "60–Day Action Plan" that outlined nine areas in which Ms. Burton needed to improve her job performance. In December, 1991, Ms. Burton was again placed on probation due to the poor quality of her overall work performance. Her job

rating was lowered to "Unsatisfactory." Ms. Burton completed this probationary period and in February, 1992, her job rating was returned to "Competent." Ms. Burton was warned that further poor evaluations could result in termination. (Def.Ex. 10).

In December, 1992, Ms. Burton was evaluated by Sharon Host, a Caucasian woman, and Paul Warner, a Caucasian male. Ms. Burton received an overall evaluation of "Competent," with a few "Needs Improvement" ratings in individual categories. Ms. Burton's 1993 evaluation was performed by Ms. Howard and Mr. Warner. Ms. Burton received an overall performance rating of "Unsatisfactory," with ratings of "Unsatisfactory" in most individual categories. Ms. Burton was consequently placed on a 30–day probation period in December, 1993. Ms. Burton completed her probationary period after she returned from a disability leave. In November, 1994, Ms. Burton lost her job in a corporate reorganization.

Ms. Burton complains that in the 1990's she applied but was not promoted to three separate jobs: 1) underwriting trainee, 2) underwriting technician, and 3) pricing reserving analyst. Ms. Burton's "job grade" as a word processor was 20. All three of the jobs she applied for were graded at 30 or higher. According to CNA employees in the human resources department, "[u]nder normal circumstances, it is unusual, even for an employee with an excellent performance history, to successfully post for a position at CNA which will cause them to jump more than five grade levels." (Scott Aff. ¶ 8; Samuel Aff. ¶ 9). CNA employees were unaware of any individual who had been on probation more than one time who had successfully been promoted ten grade levels. *Id.* Additionally, CNA employees were unaware of any employee who had been on five or more action and probation plans who had successfully been promoted. (Warner Aff. ¶ 11; Samuel Aff. ¶ 12; Host Aff. ¶ 11; Scott Aff. ¶ 6). Ms. Burton was placed on six action and probation plans.

While Ms. Burton complains that both Ms. Host and Mr. Warner were somehow responsible for her not receiving a promotion, this is clearly not the case. The year Ms. Host

and Mr. Warner evaluated Ms. Burton, she received a rating of "Competent," one of the highest ratings she garnered during her tenure at CNA. Further, as Ms. Burton's supervisor, Ms. Host's role in the promotion process was simply to forward Ms. Burton's applications to Mr. Warner, Ms. Burton's manager. Mr. Warner's role in the application process was simply to sign Ms. Burton's application and forward it to the appropriate human resources manager. Mr. Warner signed each and every application Ms. Burton filed. Neither Ms. Host nor Mr. Warner ever made decisions regarding whether Ms. Burton would interview for a position.[4] At CNA, the hiring manager of the department in which the sought-after-job is located ultimately decides who will be interviewed. To the knowledge of all of the CNA affiants, employees with multiple "Needs Improvement" ratings and a history of action and probation plans rarely, if ever, receive interviews for promotions or are actually promoted. (Warner Aff. ¶ 11; Samuel Aff. ¶ 12; Host Aff. ¶ 11; Scott Aff. ¶ 6).

 Ms. Burton has not presented evidence that she was qualified for the promotions she sought. Her summary judgment motion simply realleges the discrimination claims in her complaint. Ms. Burton's work evaluations evince a history of poor performance at CNA. She applied for promotions to jobs ten grade levels above her own. Given Ms. Burton's work history, such a promotion would have been unprecedented at CNA. Indeed, those CNA employees who presented evidence indicated individuals who had been on five or more action and probation plans were never promoted. This evidence is uncontroverted by Ms. Burton. *See Patterson v. General Motors Corp.*, 631 F.2d 476,

482 (7th Cir.1980) ("Mere conclusory assertions of discrimination are not sufficient to withstand a motion for summary judgment.").[5]

### Conclusion

For the foregoing reasons, Ms. Burton has not made out a prima facie case of discrimination under Title VII. Accordingly, her motion for summary judgment is denied and CNA's motion for summary judgment is granted.

---

**4.** Ms. Host also applied for the position of underwriter trainee at the same time as Ms. Burton. Ms. Host has never received a evaluation rating of lower than "Competent." Ms. Host was not even interviewed for the position.

**5.** To the extent Ms. Burton claims that she did not receive promotions after April, 1993, because she filed an EEOC complaint, this retaliation charge is without merit. To establish a prima facie case of retaliation under Title VII, Ms. Burton must prove: 1) she engaged in protected

speech, 2) she suffered an adverse employment action by CNA, and 3) there is a causal connection between her speech and the adverse employment action. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (1989). Ms. Burton has presented absolutely no evidence that her failure to receive promotions was related to her filing an EEOC complaint. The evidence indicates Ms. Burton was denied promotion before and after her complaint due to her poor work performance.