134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Nolan Isaac TURNER, Plaintiff-Appellant,
v.
IDS FINANCIAL SERVICES, INC., Defendants-Appellees.
 No. 97-2264.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 21, 1997.*
Decided Jan. 20, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied March 9, 1998.
 
 Before FLAUM, RIPPLE and WOOD, Circuit Judges.
 
 ORDER
 
 1
 Noland I. Turner, an African-American, was hired by the Indianapolis office of IDS Financial Services, Inc. ("IDS" or the "Company"), as a financial planner trainee in March 1991.[1] About one month before completing his one-year training period, IDS told Turner that his sales performance was inadequate and terminated him. Turner, proceeding pro se, filed suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., alleging race discrimination. The district court granted summary judgment in favor of IDS, and this appeal followed. We affirm.
 
 
 2
 After hiring Turner as a financial planner trainee, IDS sent Turner to its financial planning school. It was there that Turner learned that the sale of financial plans could lead to a productive career at IDS. The idea was that a client who purchased a financial plan from IDS would most likely implement that plan by purchasing other financial products from IDS. Turner decided to focus his efforts on the sale of financial plans to meet IDS's sales goals--the approach preferred by IDS, according to Turner.
 
 
 3
 IDS expects a first-year financial planner to sell 12 financial plans and $1.4 million in financial products (including the financial plans) by the end of his first year. To monitor the performance of individual planners, the planner's first year is divided into twenty-six, two-week service periods, and for each service period, a report is generated showing the individual's actual performance (actual total weighted production (TWP)) compared to the desired performance (goal TWP). The report also includes the planner's production validation schedule (PVS), which is the minimum level of cumulative weighted production a financial planner should reach each service period during his first three years as an IDS planner. The PVS and TWP goals increase each service period so that by the twenty-sixth period the planner will have sold $1.4 million in financial products.
 
 
 4
 Although Turner knew that the sale of twelve financial plans alone would not achieve $1.4 million TWP, he believed that it was necessary to sell a customer a financial plan before selling him any other financial products. Beginning with Turner's fifth service period, his PVS dropped from over 100% of the goal to 78.9%. Thereafter, Turner's PVS steadily declined and for the most part hovered in the range of 50-60% for the remainder of his employment. Notwithstanding ample warning, Turner's performance did not improve markedly. By his twenty-third service period, Turner had sold $704,079 in financial products compared to his goal of $1,182,000, and only six weeks remained for him to reach the year-end goal of $1.4 million. Charles Hinkle, the Indianapolis Division Vice President, terminated Turner in February 1992 allegedly due to his poor performance.
 
 
 5
 We review the district court's award of summary judgment de novo. Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir.1997). Applying the same standards as the district court, all facts and inferences are viewed in the light most favorable to the non-moving party. Oates v. Discovery Zone, 116 F.3d 1161, 1165 (7th Cir.1997) (citation omitted). Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)
 
 
 6
 Turner basically raises two claims on appeal. First, Turner argues that the district court erred in granting summary judgment because he raised a genuine issue of material fact with regard to his claim of race discrimination. Second, he contends that the district court abused its discretion in denying his motion to compel discovery from IDS. Neither of these claims warrant reversal.
 
 
 7
 Turner makes several attempts to demonstrate a question of fact. Turner claims, albeit inartfully, that the district court erred in concluding that he had not established a prima facie case of race discrimination. Specifically, he challenges the district court's conclusion that his performance did not meet IDS's legitimate expectations. Turner contends that although he had not met his PVS goals, his performance was satisfactory because he achieved every other goal for first year planners--he passed the exam to become a member of the National Association of Security Dealers, finished in the top 10% of the IDS Financial Planning School, and passed a series of local training courses. However, that Turner may have satisfied these other goals is irrelevant because Miller and Hinkle made it clear that Turner's failure to meet his PVS goals on a regular basis was not acceptable. See Courtney v. Biosound, Inc., 42 F.3d 414, 422-23 (7th Cir.1994) (" '[A]n employer can set whatever performance standards he wants' and 'courts must be careful not to second-guess the employer's assessments of the employee's performance,' as long as 'these assessments are not a mask for discrimination.' ") (citations omitted).
 
 
 8
 Turner attempts to show that there is a material question of fact regarding whether he received the 1990 or the 1991 edition of the booklet, Understanding Your IDS Planner Portfolio, which sets forth the sales requirements for first-year planners. Turner claims that his employment was governed by the 1990 booklet, which does not list PVS requirements for first-year planners; therefore, if the district court had resolved this question of fact in Turner's favor, IDS's argument that Turner failed to meet his PVS goals would be defeated. This argument is meritless. Turner received weekly performance reports and at least one plan of action, which made him well aware of the PVS requirements for first-year planners. Furthermore, the 1990 booklet specifically states that first-year planners are required to achieve $1.4 million in TWP, which at least for first-years was the same as PVS.
 
 
 9
 Turner seemingly tries to demonstrate pretext by arguing that IDS terminated him when he still had four more weeks to achieve $1.4 million PVS. Ultimately, the issue in this case is whether IDS terminated Turner for a nondiscriminatory reason. When Hinkle decided to terminate Turner, six weeks before the end of the year, Turner had sold only $704,079 in financial products. The fact that Hinkle did not wait six more weeks to see if Turner could meet the $1.4 million goal is not suspicious given Turner's failure to meet his PVS goals for the previous nineteen service periods. See Sample v. Aldi Inc., 61 F.3d 544, 551 (7th Cir.1995). Turner has thus failed to raise a genuine issue of material fact regarding his race discrimination claim.
 
 
 10
 Turner next argues that the district court abused its discretion in denying his motions to compel discovery because in doing so the district court effectively denied him access to the evidence he needed to prove his race discrimination claim. We review discovery decisions for abuse of discretion. Brill v. Lante Corp., 119 F.3d 1266, 1275 (7th Cir.1997).
 
 
 11
 The district court denied Turner's motions to compel because the information he sought did not "appear calculated to bear upon any of the factual or legal issues raised by the defendant's motion for summary judgment." Notwithstanding this ruling, the district court gave Turner the opportunity to obtain a further extension of time to respond to defendant's motion, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Although he filed two motion for extension of time, neither included the information required by Rule 56(f).
 
 
 12
 A review of the information Turner requested and IDS's responses demonstrates that Turner received all the information relevant to his race discrimination claim. Therefore, the district court did not abuse its discretion in denying Turner's motions to compel.
 
 
 13
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 IDS became American Express Financial Advisors, Inc., on January 1, 1995