**Wonda DAY, Plaintiff,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY, Defendant.**

No. 2:96–CV–222–RL–1.

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 19, 1997.

Michael J. Foley, Foley and Foley, Chicago, IL, for Plaintiff.

Robert D. Campbell, Andrew C. Porter, Schiff, Hardin and Wiate, Chicago, IL, for Defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the following motions: (1) Defendant Nipsco's Motion for Summary Judgment, filed on May 30, 1997; (2) Nipsco's Motion to Strike Plaintiff's Statement of Facts and Plaintiff's Entire Affidavit, filed on August 29, 1997; and (3) Plaintiff's Motion to Strike Defendant's Supplemental State of Facts and Supplementary Materials in Support of Defendant's Motion for Summary Judgment, filed on October 2, 1997. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**; Defendant's Motion to Strike Plaintiff's Statement of Facts and Plaintiff's Entire Affidavit is **GRANTED**; and Plaintiff's Motion to Strike Defendant's Supplemental Statement of Facts and Supplementary Materials in Support of Defendant's Motion for Summary Judgment is **GRANTED**. The Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.

### BACKGROUND

Northern Indiana Public Service Company ("Nipsco") has employed Wonda Day ("Day") as a customer service representative ("CSR") since September 1989. In December of 1992, Day filed an EEOC charge against Nipsco alleging race discrimination. She filed a second EEOC charge based on race discrimination and retaliation in 1993. In 1996, Day filed a complaint based on her 1993 charge asserting violations of Title VII and 42 U.S.C. section 1981 against Nipsco. Nipsco now moves for summary judgment.

### DISCUSSION

■ As a threshold matter, the Court will discuss Nipsco's motion to strike Day's statement of facts and affidavit. According to Local Rule 56.1, the party contesting summary judgment should file any affidavits or other documentary evidence along with an answer brief. The answer brief should set forth, "with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence," all material facts to which he contends there is a genuine issue. N.D.Ind.L.R. 56.1. A party contesting summary judgment is responsible for highlighting the factual claims that conflict as well as any record evidenced that confirms the dispute. *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) (discussing Southern District of Indiana's Local Rule 56.1, which mirrors this Court's Local Rule 56.1). A district court is not required to "scour the record looking for factual disputes." *Id.* at 641 (quoting *Waldridge v. American Hoechst Co.,* 24 F.3d 918, 922 (7th Cir.1994)).

Day's response to the summary judgment motion only once cites any of its sixteen exhibits or four depositions. This is not sufficient to satisfy the citation requirement of Local Rule 56.1. The Court will not comb through each of the fifty-five pages of Day's exhibits to discover if she has factual support for her assertions. Nipsco's motion to strike is **GRANTED**.

Day has filed a motion to strike Nipsco's supplemental statement of material facts in support of its motion for summary judgment. Allowing the supplemental statement would require the Court to grant Day an opportunity to respond. In any event, the Court concludes that summary judgment is proper even without considering Nipsco's supplemental statement of facts. Therefore, Day's motion to strike Nipsco's supplemental Statement of facts is **GRANTED**.

### Summary Judgment

The standards generally governing summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must read all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Nucor Corp. v. Aceros*

*Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

The burden is on the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met this burden, the non-moving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

As for substantive law, the arguments of the parties must be evaluated under the proof methodology developed for Title VII and section 1981 cases. As an initial matter, Day may proceed to prove her case under either the direct or indirect method. *Kirk v. Fed. Prop. Mgmt. Corp.,* 22 F.3d 135, 138 (7th Cir.1994). Day attempts to prove her case only under the indirect method.

The indirect method of proof puts the parties through a series of burden-shifting steps outlined in *McDonnell Douglas Corp. v.* *Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The basic burden-shifting formula is flexible and may be adapted as appropriate to a given case. *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 523 (7th Cir.1994); *Friedel v. City of Madison,* 832 F.2d 965, 972 n. 5 (7th Cir.1987).

A plaintiff has the initial burden of establishing a prima facie case of discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. Here, Day claims that Nipsco violated Title VII by discriminating against her because of her race. Thus, to make out her Title VII prima facie case of race discrimination, Day must show that (1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) similarly situated employees received more favorable treatment. *Johnson v. City of Ft. Wayne, Indiana,* 91 F.3d 922, 931 (7th Cir.1996).

The plaintiff's establishing a prima facie case creates a rebuttable presumption of discrimination. *Sample v. Aldi, Inc.,* 61 F.3d 544, 548 (7th Cir.1995); *Loyd,* 25 F.3d at 522; *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). The employer then assumes a burden of production; the employer must articulate a legitimate, nondiscriminatory reason for the adverse action against the plaintiff. *Id.* Once the employer has done so, "the presumption dissolves, and the burden shifts back to the [plaintiff] to show that the employer's proffered reasons are" false, i.e., "a pretext for" discrimination. *Anderson,* 13 F.3d at 1122; *accord Sample,* 61 F.3d at 547.

Once the case arrives at this final stage, the plaintiff can prevail in two ways. First, the plaintiff can prevail by proving the crucial ultimate fact—that the employer actually and intentionally discriminated. Second, the plaintiff *may* prevail merely by proving that the defendant's proffered reason is a pretext; such proof *permits* but does not require the trier to infer the ultimate fact that the employer discriminated. *Loyd,* 25 F.3d at 522; *Anderson,* 13 F.3d at 1123–24; *see also Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 869 (7th Cir.1995). At summary judgment,

the plaintiff can meet the pretext burden by " 'producing evidence from which a rational fact-finder could infer that the [employer] lied' about its proffered reason for" the adverse action against the plaintiff. *Anderson,* 13 F.3d at 1125 (quoting *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)).

Day's complaint includes one count of Title VII race discrimination, one count of retaliation, and one count of 42 U.S.C. section 1981 race discrimination. The Court will consider each of these counts in turn.

### Title VII Race Discrimination

 Day complains that Nipsco discriminated against her based on race in several ways.[1] Day complains that because of her race Nipsco continually disapproved or blocked consideration of her vacation day requests and that Nipsco ·harassed her and subjected her to unfavorable terms and conditions of employment. As stated above, there are four elements required to make out Day's prima facie case of race discrimination. Day, as an African–American, satisfies the first element. Because Nipsco does not dispute the second element, the Court will assume that Day performed her job satisfactorily. However, there is serious doubt as to whether Day satisfies the third element, which requires an adverse employment action. To constitute an adverse employment action under Title VII, the employment action must affect the "terms or conditions of [the plaintiff's] employment." *King v. Bd. of Regents of Univ. of Wis. Sys.,* 898 F.2d 533, 537 (7th Cir.1990). The Seventh Circuit has defined adverse employment action broadly, to include not only termination or reduction in pay, but other less readily quantifiable losses as well. *See, e.g., Collins v. State of Ill.,* 830 F.2d 692, 703 (7th Cir.1987). It may be "indicated by ... a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that may be unique to a particular situation." *Crady v.· Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). However, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996).

### Vacation–Related Claims of .Race Discrimination

 First, Day asserts that in 1994 Supervisor Chris Blank ("Blank") required Day to call in daily during her week vacation to find out if Nipsco had approved her vacation request. Day filed her second EEOC charge in 1993. As Day recognizes, "a Title VII race discrimination claim may not be predicated on conduct which occurred after the filing." (Day's Resp., p. 12) Therefore, Day cannot assert her Title VII claim based on Nipsco's determining her vacation on a day-to-day basis in 1994.

The remaining vacation-related incidents probably do not constitute adverse employment action. Day admits that she has suffered no quantifiable loss. She received all of the vacation time which she was due, and she took all of her vacation time. But even if Day was able to satisfy the third element, her claims failed because she cannot establish the fourth element of her prima facie case, and/or she cannot show pretext for Nipsco's proffered legitimate nondiscriminatory reasons for its actions.

 Second, in August 1993, Day claims that Day had to call Supervisor Sandra Grandys ("Grandys") from home to find out if Nipsco had approved her vacation request

1. Nipsco allegedly discriminated against Day by scheduling her to work on days of mandatory religious observation. As a general rule, a Title VII plaintiff cannot bring claims that were not included in the EEOC charge. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). However, all Title VII claims alleged in a complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). Therefore, "the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir.1995). Day's 1993 EEOC charge does not mention religious discrimination or any incidents of scheduling on days· of religious observation. Moreover, Day's own summary judgment response brief states that she "asserts that the conduct was *retaliatory* for her earlier assertion of rights under Title VII." (Day's Resp., p. 11) (emphasis added). Therefore, the Court will consider the conduct only as retaliation for filing the EEOC charge.

for the next day. To establish that other similarly situated employees received more favorable treatment, Day claims that "no one else ever had their vacation decided before it began." However, Day does not cite any evidence to support her claim, nor does she identify any witnesses who could possibly support her statement. Day's statement of facts mentions only that "Day is not aware of" any other employee who had her vacation decided after it began. (Day's Resp., p. 5) This conclusory statement is not enough to establish the fourth element of a prima facie case.

Third, Day states that in 1993 Nipsco did not provide her vacation eligibility information until May, while in years previous, Nipsco provided the information in January. To establish that Nipsco treated other CSR's more favorably, Day claims that she was not provided with her vacation eligibility information until three to five months after "every other CSR." (Day's Resp., p. 10) She provides no supporting evidence for her statement, and does not address when any other CSR received his or her vacation eligibility information. Day's statement is conclusory, thus, she has not established the fourth element of a prima facie case.

■ Fourth, Day asserts that in August 1993, Grandys required Day to take vacation in a week increment while allowing another CSR to take her vacation in daily increments. Nipsco cites a supervisors' mistake as its legitimate nondiscriminatory reason why it required Day to take vacation in week increments. Before June 1993, Nipsco allowed part-time employees to take vacation in daily increments. According to a June 1993 collective bargaining agreement, part-time employees were required to take their first two weeks of vacation as "weeks" rather than individual days. Grandys' Affidavit states that she first learned of the new policy when dealing with Day's request for vacation in August 1993. Apparently, Grandys was unaware of the increment change when she approved another CSR's request for a three-day vacation. Because Nipsco has articulated a legitimate nondiscriminatory reason, the burden shifts to Day to show that this proffered reason is pretextual.

■ "Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.' " *Tincher v. Wal–Mart Stores, Inc.*, 118 F.3d 1125, 1129–30 (7th Cir.1997) (quoting *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996)). Day must "create an issue as to 'whether the employer honestly believes in the reasons it offers,' not whether [the employer] made a bad decision." *Sample*, 61 F.3d at 549 (quoting *Rand v. C.F. Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.1994)). For summary judgment purposes, an employee need only produce evidence from which a rational factfinder could infer that the employer had been untrue concerning the proffered reasons. *Shager*, 913 F.2d at 401. Day argues that mistake is not a credible explanation given "the recurrence of the same conduct … in August, 1994, and the extended patter— of retaliatory conduct both before and after the August, 1993 vacation." (Day's Resp., pp. 13–14) Day does not elaborate further, and she does not provide the Court with any evidence to support her argument. Therefore, Day's claims of discrimination based on her being required to take vacation in week increments cannot survive summary judgment.

■ Fifth, Day asserts that Nipsco frequently disapproved her requests for vacation on particular days. Nipsco grants vacation requests on a first-come, first-served basis for employees with the same responsibilities. On June 11, 1993, Day was the fourth of six CSR's to request vacation, yet she was the only CSR denied vacation. It is questionable whether denial of vacation requests constitutes an adverse employment action. *Prendergast v. A. Sulka & Co.*, 1996 WL 617079, at *8 (N.D.Ill.1996). Even if it does, Nipsco argues that the two subsequent CSR's cannot be considered similarly situated to Day. Nipsco provides evidence that the fifth CSR, M. Spear, canceled her vacation request before June 11, and that the sixth CSR, M. Kavanaugh, is a "senior CSR" with different duties than Day, and thus was considered separately from Day. In her response, Day states that the two subsequent

employees are "similarly situated" without any supporting evidence.

Even assuming Day establishes a prima facie case based on her vacation request for June 11, Nipsco articulates a legitimate non-discriminatory reason for its action. Nipsco states that although it might have allowed M. Spear to take June 11 as a vacation day and denied Day's request, it would have been due to a mistake, which has happened to other CSR's before. To support its assertion, Nipsco provides evidence of two other incidents (one of which occurred on June 7, 1993) where Nipsco approved vacation requests of African–American CSR's subsequent to denying vacation requests of other CSR's. As explained above, mistake is not enough to prove pretext; Day must now show that Nipsco was lying. *See Tincher,* 118 F.3d at 1129–30. Day responds that "Grandys' explanation at the EEOC conference was not that others were not similarly situated, but rather that she had made another mistake." (Day's Resp., p. 14) Aside from the fact that Day provides no evidence of Grandys' explanation at the EEOC conference, the statement does not prove pretext. Consequently, Day cannot survive summary judgment based on the June 11 vacation denial.

Finally, Day's EEOC complaint includes denials of other vacation days (June 10, July 6, 7, and 9, 1993) for which Nipsco articulates a legitimate nondiscriminatory reason. Nipsco grants vacation requests on a first-come, first-served basis for employees with the same responsibilities. Nipsco's evidence proves that Day was the last employee to request vacation on these days, and therefore was the first employee to be denied. Day does not respond to Nipsco's legitimate non-discriminatory reason for the denial of these days, thereby failing to show pretext. Thus, Day is unable to survive summary judgment based on the denial of these vacation days.

*Terms and Conditions of Employment Claims of Race Discrimination*

Day asserts that Nipsco harassed her and subjected her to unfavorable terms and conditions of employment. Again Day's statement of facts indicates that some actions complained of took place after Day filed her second EEOC charge in November 1993. As Day recognizes, "a Title VII race discrimination claim may not be predicated on conduct which occurred after the filing." (Day's Resp., p. 12) Accordingly, Day cannot base a Title VII claim on being assigned to the late shift outside of seniority order which allegedly occurred in August and October 1994, though she may claim being assigned evening work contrary to her seniority rights in January 1993. She cannot base her Title VII claim on improper counseling that allegedly took place in January, February, and March of 1996. Finally, Day alleged that she was singled out for special attention about her breaks both in May 1993 and February 1996. The Court will not consider her 1996 allegations. Thus, the Court is left with Day's allegations of being assigned work contrary to her seniority in March 1993, being excluded from one departmental meeting in June 1993, and being singled out for special attention about her breaks in 1993.

■ Without citing supporting evidence, Day states that supervisors Grandys and Linda Buzinec ("Buzinec") assigned her to "evening work contrary to her seniority rights" in March 1993 and that Buzinec excluded her from a departmental meeting in June 1993. Day makes no attempt to explain how these allegations constitute an adverse employment action. Even if they constitute adverse employment action, Day does not address the fourth element of her prima facie case. She does not allege that other similarly situated employees received more favorable treatment. In Day's affidavit, she admits that Buzinec said "everyone could not attend the meeting and that there were others who did not attend," but Day does not describe or identify these others. Consequently, Day has filed to make a prima facie case based on these two incidents.

■ Day alleges that she was singled out about her breaks in 1993 when she was required to e-mail all supervisors whenever she took a late lunch break, though two other presumably non-Black employees were not required to do so. Again, Day provides the Court with no evidence to support this allegation. Moreover, this claim fails to assert a convincing adverse employment action because Day was never disciplined for failing to provide such notice to the supervisors. *See McKenzie v. Ill. Dept. of Transp.,* 92 F.3d

473, 484 (7th Cir.1996) (questioning whether policy on breaks is an adverse employment action).

■ Even if the Court were to find that Day has made a prima facie case, Nipsco provides evidence of a legitimate nondiscriminatory reason for the break requirement. Nipsco states that it imposed this requirement on other employees as well. In her 1993 EEOC charge, Day notes that, "I asked Linda Buzinec [why Day had to give notice if she was taking a late lunch] and she stated that she required it because of some representatives leaving late for lunch so that they could have lunch with a friend." Day does not respond to Nipsco's proffered legitimate nondiscriminatory reason for the notice requirement, and offers no evidence that Nipsco's proffered reason was pretextual. *See McKenzie,* 92 F.3d at 484 (granting summary judgment on a retaliation claim based on a break policy where the plaintiff "failed to present any evidence tending to cast doubt on the testimony ... that the break policy applied to all employees"). Thus, Day is unable to create an inference of race discrimination sufficient to survive summary judgment.

*Retaliation*

Day claims that Nipsco retaliated against her because she filed an EEOC charge in December 1992. The *McDonnell Douglas* burden-shifting test applies to Day's retaliation claim just as it did to her race discrimination claim. In order to prove a prima facie case of retaliation, a plaintiff must offer evidence that "(1) she engaged in a protected activity under Title VII; (2) she suffered an adverse employment action subsequent to her participation; and (3) there exists a causal connection between the adverse employment action and her participation in protected activity." *McKenzie,* 92 F.3d at 483.

■ Day satisfies the first element because filing EEOC charges is a protected activity under Title VII. *See* 42 U.S.C. § 2000e–3(a). Even assuming that Day suffered an adverse employment action, her prima facie case fails because she has not demonstrated any causal connection between her filing the EEOC charge and the purported adverse employment action.

■ "There generally can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir.1994); *see also Doe by Doe v. City of Belleville,* 119 F.3d 563, 596 (7th Cir.1997) (granting summary judgment on a retaliation claim where there was "no evidence suggesting that the Does' harassers had learned that the Does had complained to anyone of the harassment and that they were retaliating for that reason"), *pet. for cert. filed,* 66 U.S.L.W. 3308 (Oct. 15, 1997) No. 97–669. Day claims that supervisors Grandys and Buzinec retaliated against her for filing an EEOC charge in December 1992. Grandys, in both her affidavit and her deposition, said that she did not learn of Day's EEOC charge until 1996. Day admitted at her deposition that she said nothing to Grandys or Buzinec about her charge, and that she assumed their knowledge solely on their employment with Nipsco. "Speculation does not create a genuine issue of fact; instead, it creates a false issue the demolition of which is a primary goal of summary judgment." *Hedberg v. Ind. Bell Tel. Co., Inc.,* 47 F.3d 928, 932 (7th Cir.1995).

Day responds that Grandys gave inconsistent testimony about when she learned of Day's 1992 EEOC charge. Day states that at Grandys' deposition, Grandys said she learned of the charge in 1997, while in her affidavit, Grandys said she learned of it in 1996. Day's statement is completely unsupported, especially considering that this single cite to evidence in her statement of facts contradicts her own allegation. The Court reviewed both Grandys affidavit and deposition; both clearly say Grandys learned of Day's 1992 EEOC charge in 1996. Day is silent as to Buzinec.

Because the supervisors did not know about the EEOC charge, most of Day's allegations of retaliation fail, even if Day had evidentiary support for them. The allegations fail because the incidents predate 1996, when the supervisors learned of Day's 1992 charge. Specifically, Grandys and Buzinec could not have retaliated against Day in 1993 when they assigned her to work on Wednes-

days, a day of religious obligation. Buzinec could not have retaliated against Day when she allegedly excluded her from one departmental meeting in June 1993. Grandys could not have retaliated against Day when, in May 1993, she required Day to e-mail supervisors whenever she took a late lunch. Grandys could not have retaliated against Day in August 1993 when she required Day to take vacation in week increments, or when Day had to call Grandys from home to find out if she had received vacation time for the next day, or when Grandys assigned Day to the late shift outside of seniority order. Finally, Grandys could not have retaliated against Day in 1994 when she allegedly gave Day's light duty rotation to another white employee, or when she allegedly shortened Day's vacation time.

■ Day has claimed other retaliatory acts by Nipsco supervisors other than Grandys and Buzinec that begin in 1994, a year and a half after Day filed her initial EEOC charge. These also fail for lack of a causal connection.

■ A plaintiff may provide evidence that she suffered an adverse consequence shortly after her protected activity to establish a causal link between a protected activity and adverse action. *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir.1996). A close temporal connection between protected activity and the adverse action "is generally enough to satisfy the third element of the prima facie test;" however, as the temporal distance between the two events increases, the likelihood of a causal link decreases. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir.1997) (quoting *McKenzie*, 92 F.3d at 485); *see Johnson v. Univ. of Wis.–Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995) ("[T]he substantial time lapse between the two events is counter-evidence of any causal connection.").

Day states that supervisor Blank told her that she would not approve Day's vacation for one week in August 1994, but that she had to call in daily to find out whether she was approved. The other acts of retaliation allegedly took place in the spring of 1996 when supervisor Sandra Davis ("Davis") improperly counseled Day regarding productivity standards, and on February 8, 1996, when

Blank allegedly contacted Day several times at work to check on her whereabouts. In March 1996, Davis allegedly began returning Day's incorrect time sheets, rather than correcting them for her as she did for other CSR's, and told Day that she would have to take vacation in week increments. Day does not provide any evidence to support these allegations. Moreover, the year and a half and three-year time lapses between Day's filing of the EEOC charge in 1992 and the alleged retaliation infer that any causal connection is unlikely. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir.1992) (finding that temporal proximity of filing an EEOC charge and the alleged retaliation four months and then two years later, standing by itself, did not sufficiently infer a causal connection). Day does not offer any other evidence to infer a causal connection, thus, her retaliation claim fails.

### Section 1981 Race Discrimination

■ Count Three of Day's complaint alleges race discrimination based on 42 U.S.C. section 1981. Section 1981 guarantees the right to be free from racial discrimination and the making and enforcement of contracts. Since being amended in 1991, section 1981 covers the making, performance, modification, and terms of a contract, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b). To establish a claim under section 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996).

■ "Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson*, 91 F.3d at 940 (citations omitted). Some of the allegations in Day's section 1981 claim are the same as her Title VII allegations. Day's Title VII allegations concern Nipsco's actions before November 1993, when she filed her second EEOC charge. Consistent with the foregoing analysis of Day's Title VII

claim, therefore, the Court denies the aspects of her section 1981 claim that state the same allegations as her Title VII allegations. See id.

Because Day did not adhere to Local Rule 56.1, she has no evidence to support her post–1993 allegations of a section 1981 violation. Concededly, Nipsco's own evidence touches on Day's allegation that Grandys gave Day's "light duty" mail room rotation week to other part-time employees twice in 1994. However, Nipsco shows that Day admitted that she did work the first "light duty" rotation, and could not remember if she eventually worked the second "light duty" rotation. In short, nothing substantial indicates that Nipsco wronged Day regarding her "light duty" rotation. Consequently, Day's section 1981 claim is unable to survive summary judgment.

*Hostile Work Environment*

 Day's response brief seems to touch briefly on a hostile work environment argument under Title VII. In a hostile work environment claim, a court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [ ] whether it unreasonably interferes with an employee's work performance," and whether similar conduct would have had the same effect on "a reasonable person in the plaintiff's position" as it did on the plaintiff. *Dey,* 28 F.3d at 1454 (citation omitted). Because she failed to follow Local Rule 56.1, Day does not provide any evidence of hostile work environment. Nipsco provides evidence to refute Day's allegations, necessarily acquiescing that some of the alleged actions occurred. However, the alleged acts of harassment are neither severe nor pervasive enough to establish a hostile environment. Nipsco's acts, such as denying vacation on the dates Day requested and excluding her from one meeting in 1993, were infrequent and not physically threatening or humiliating. Day admits that no Nipsco employee ever uttered a racial slur against her. Day never alleges that harassment interfered with her work performance. Furthermore, even if Day does subjectively believe that the alleged actions rise to the level of a hostile work environment, a reasonable person in her position would disagree. Thus, the

Court finds that Day's hostile work environment claim cannot survive summary judgment.

*CONCLUSION*

For the foregoing reasons, Nipsco's Motion for Summary Judgment is **GRANTED**; Nipsco's Motion to Strike Plaintiff's Statement of Facts and Plaintiff's Entire Affidavit is **GRANTED**; and Plaintiff's Motion to Strike Defendant's Supplemental Statement of Facts and Supplementary Materials in Support of Defendant's Motion for Summary Judgment is **GRANTED.** The Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.