142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Peter GILLO, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF THE CITY OF CHICAGO, ILLINOIS, Whitney
Young High School, Powhatan Collins, et al.,
Defendants-Appellees.
 No. 97-3237.
 United States Court of Appeals, Seventh Circuit.
 Argued April 9, 1998.
Decided May 22, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 94 C 5666.
 Before Hon. WALTER J. CUMMINGS, Hon. RICHARD D. CUDAHY, and Hon. KENNETH F. RIPPLE, Circuit Judges.
 ORDER
 GETTLEMAN, J.
 According to the second amended complaint, plaintiff is a black United States citizen residing in Maywood, Illinois. The defendants are the Board of Education of the City of Chicago, the Whitney Young High School, Powhatan Collins, Nancy Lazaris and Paula Tumas, with their business headquarters at 1819 West Pershing Road in Chicago.
 Powhatan Collins, a black male, was the Principal at Whitney Young High School. According to the first amended complaint, Nancy Lazaris was head teacher for the Hearing Impaired Program there and plaintiffs supervisor. Paula Tumas was the white assistant principal in charge of that program and succeeded Ms. Lazaris as plaintiff's supervisor.
 On July 29, 1991, plaintiff filed charges of discrimination against the defendants with the Illinois Department of Human Rights, which were cross-filed with the Chicago District Office of the United States Equal Employment Opportunity Commission. The Civil Rights Division of the United States Department of Justice issued a notice of right to sue, which plaintiff received on June 29, 1994.
 
 
 1
 Count I of the second amended complaint is entitled Race Discrimination and alleges that plaintiff was hired by defendants in September 1979 as a teacher for the hearing impaired at the Whitney Young High School. Plaintiff had an excellent performance rating until March 1991 when Paula Tumas, Whitney Young's acting assistant principal, a white female, became his immediate supervisor. She allegedly subjected plaintiff to unequal terms and conditions of employment by issuing arbitrary negative classroom visitation reports regarding his performance. In addition, Powhatan Collins, the principal of that school, duplicated Tumas' classroom visitation reports. Consequently, plaintiff's efficiency rating was reduced to satisfactory from excellent. In June plaintiff was denied summer employment by defendants without any reason.
 
 
 2
 From June 1991 through December 1993, plaintiff was allegedly subjected to the following adverse actions by defendants: (1) Being accused of leaving posts unattended when he was actually directed to report to different posts, (2) the replacement of non-problematic students with "an inordinate amount" of problematic students, and (3) the issuance of arbitrary and negative classroom visitation reports regarding his performance. Through these actions defendants unlawfully discriminated against plaintiff on the basis of his black race in violation of Title VII of the Civil Rights Act of 1964.
 
 
 3
 Count II is entitled National Origin Discrimination and repeats some of the allegations in Count I. While plaintiff is of Sudanese origin, the other employees of defendants were not subjected to discrimination. This also is said to violate Title VII of the Civil Rights Act.
 
 
 4
 Count III is entitled Sex Discrimination and repeats many of the allegations of the prior two Counts. Female employees of defendants were supposedly not subject to defendants' adverse actions. Defendants allegedly unlawfully discriminated against plaintiff on the basis of his sex, again in violation of Title VII of the Civil Rights Act.
 
 
 5
 Count IV is entitled Retaliation and repeats many of the prior allegations. In June 1993, plaintiff applied for a position as a teacher in Whitney Young's Options for Knowledge deaf education program but in August 1993 he was informed that he had not been selected. No reason was given.
 
 
 6
 Count V is the final Count and is entitled Handicap Discrimination. In that Count most of the prior allegations are realleged. This Count concludes by claiming that defendants discriminated against plaintiff on the basis of his deafness in violation of the Americans with Disabilities Act of 1990, even though his handicap supposedly did not interfere with the performance of his duties.
 
 
 7
 At the conclusion of the five Counts the second amended complaint asks for a declaration that defendants violated federal law and requests reinstatement to a position plaintiff otherwise would have occupied. He also sought a payroll adjustment comparable to non-handicapped employees plus back salary and fringe benefits. His final request was for an injunction prohibiting defendants from discriminatory employment practices (on the basis of sex, race, national origin and handicap) and retaliation for filing discrimination charges.
 
 
 8
 Thereafter defendants filed a motion for summary judgment on all Counts, and on June 30, 1997, Judge Gettleman released a Memorandum Opinion and Order granting that motion.
 
 
 9
 In the part of the opinion discussing discrimination based on race, national origin and gender, the court pointed out that defendants offered the records of two black male teachers, a deaf white male teacher, a white female teacher and a deaf white female teacher, who received "excellent" or "superior" ratings because they had fewer negative notations concerning classroom decorum, productivity and punctuality than plaintiff. Defendants also showed that plaintiff was notified in writing on several occasions that he was required to be at his post when he was actually absent. Defendants explained to the court that many of the problem students assigned to plaintiff were taught by other teachers who did not encounter the same problems with them as plaintiff did.
 
 
 10
 Defendants also showed that plaintiff was not hired for a summer position in 1991 because of his unacceptable behavior and inadequate job performance. According to defendants, 25 teachers applied for twelve summer positions. Five white teachers were selected while another five white teachers were not selected. Eleven women were selected while eight women were not. Also, seven African-American teachers and three hearing-impaired teachers were selected.[1]
 
 
 11
 The court agreed with defendants that even if plaintiff was the only teacher to receive a "satisfactory" rating in 1991 and 1993, that would not establish a prima facie case. Therefore defendants' motion for summary judgment on Counts I through III was granted.
 
 
 12
 The court concluded that defendants met their burden of production because they articulated a legitimate non-discriminatory reason for observation, rating, and notifying plaintiff of failure to be at his post and concluding that he did not perform his teaching duties adequately. The opinion concludes that plaintiff was unable to show that defendants' explanation was unworthy of credence.
 
 
 13
 Again dealing with the alleged discrimination based on race, national origin and gender, Judge Gettleman concluded that plaintiff had failed to demonstrate that "Tumas' observation reports, Collins' ratings, and other alleged acts of harassment were based on a discriminatory animus."
 
 
 14
 As to defendants' failure to hire plaintiff in the summer of 1991, the opinion concluded that Counts I through III failed to establish a prima facie case because other black teachers and white teachers, both male and female, disabled and non-disabled, were then hired.
 
 
 15
 The district judge concluded that plaintiff failed to show that defendants were not honest in their reasons not to hire plaintiff in the summer of 1991, so that plaintiff had not shown discrimination based on race, national origin and gender.
 
 
 16
 As to retaliation under Title VII of the Civil Rights Act, the court concluded that plaintiff did not show a causal link "between his 1991 complaint and his teacher evaluations, the assignment of 'problem students' to his classroom and the allegedly unfounded accusations of plaintiff not being at his post." Consequently defendants' motion for summary judgment on Count IV was granted.
 
 
 17
 The final portion of the opinion below deals with alleged disability discrimination under the Americans With Disabilities Act. The court pointed out that the parties agreed that plaintiff's deafness did not affect his ability to do his job and that the record did not show that plaintiff was harassed or not hired for the 1993 Options Program because he is deaf. Indeed the Board showed that it hired both deaf and non-deaf teachers to meet the goals of the Options Program. Since there was no evidence to support plaintiff's claims of Americans With Disabilities Act discrimination, summary judgment was also granted on that Count.
 
 
 18
 As in Leffel v. Valley Financial Services, 113 F.3d 787, 795 (7th Cir.1997), the district court was justified in concluding that defendants' treatment of plaintiff was justified by shortcomings in his work rather than prejudice against a deaf black person of Sudanese origin. Plaintiff simply failed to show that he was up to the job. Leffel states the requirements of a prima facie case under the ADA more authoritatively than Kocsis v. Multi-Care Management, 97 F.3d 876, 882 (6th Cir.1996), the case relied on by the district court.
 
 
 19
 For the reasons given in the district court's opinion, which is attached as an appendix hereto, summary judgment for defendants is affirmed.
 
 APPENDIX
 MEMORANDUM OPINION AND ORDER
 
 20
 Plaintiff Peter Gillo has filed a five-count second amended complaint against defendants Board of Education of the City of Chicago ("City"), Whitney Young High School, Powhatan Collins, Nancy Lazaris, and Paula Tumas, alleging discrimination based on his race (black) (Count I), national origin (Sudanese) (Count II), and gender (male) (Count III), and retaliation (Count IV) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"). In Count V, plaintiff alleges discrimination based on his physical disability, deafness, in violation of the Americans with Disability Act, ("ADA"), 42 U.S.C. § 12111 et seq. Defendants have brought the instant motion for summary judgment on all counts. For the reasons set forth below, defendants' motion is granted on all counts.
 
 FACTS
 
 21
 Peter Gillo was hired to teach hearing impaired children at Whitney Young High School ("Whitney Young") in the late 1970's or early 1980's.[1] Plaintiff was assigned to the Hearing Impaired Program at Whitney Young. Plaintiff is deaf, and the parties agree that plaintiff's deafness does not affect his ability to do his job.
 
 
 22
 Defendants allege that several students, teachers, and administrators complained about plaintiff's teaching, class management, and punctuality from 1984 to the present. Defendants offer reports and other documents allegedly from plaintiff's personnel file with defendants to support these allegations. Defendants also allege that plaintiff was disciplined for some of the complained of events. Plaintiff, however, denies that many of the alleged complaints were made and disputes the accuracy of the documents offered by defendants. In addition, plaintiff alleges that, until the start of the instant law suit, he did not have access to his personnel file.
 
 
 23
 From 1979 to 1986, plaintiff received an "excellent" teacher evaluation rating, where the possible ratings included: poor, satisfactory, excellent, and superior. Plaintiff also received an "excellent" rating in 1988 and 1989. In 1987, 1991, and 1993, defendants' records reflect that plaintiff received a "satisfactory" rating. Plaintiff was not rated in 1990 and 1992. Plaintiff claims that he was not given a copy of his teaching rating in 1987 and, therefore, unlike with the other evaluations, plaintiff did not sign the 1987 evaluation.
 
 
 24
 In 1991, Paula Tumas ("Tumas") became the assistant principal of Whitney Young. At this time, Powhatan Collins ("Collins"), was the school principal. Tumas can communicate in sign language, while Collins cannot.
 
 
 25
 The Teacher Evaluation Plan Handbook for Whitney Young requires at least two observations of teachers in a school year, which are to be placed in the teacher's personnel file. The evaluations from such observations are based on the subjective decisions of the observer. Defendants contend that a final teaching rating may be given only by the principal. Further, the principal must complete at least one teacher observation a year.
 
 
 26
 After Tumas became assistant principal, she often observed plaintiff's teaching and class management. Collins often consulted Tumas' evaluations in deciding the teaching rating that plaintiff would receive. In 1993, Collins gave plaintiff a "satisfactory" rating, but did not follow the proper procedures in lowering plaintiff's rating because plaintiff was not issued an "E-1" form for performance deficiency.
 
 
 27
 In March 1991, plaintiff returned to teach at Whitney Young after approximately a one-year period of absence. Plaintiff was assigned to a meeting room with at least one full glass wall for use as his classroom. Defendants explain that plaintiff was assigned to that room because, when plaintiff returned to Whitney Young in the middle of the school year, no other rooms were available for use as a classroom.
 
 
 28
 In the summer of 1991, defendants advertised for summer teaching positions at Whitney Young. Defendants contend that 25 teachers applied for the positions, and that plaintiff was among the 13 teachers who were not hired. The parties agree that not all of the teachers considered for summer positions in 1991 had the requisite observation forms in their personnel files.
 
 
 29
 Beginning in the summer of 1993, Whitney Young instituted an "Options for Knowledge" deaf education program ("Options Program"). Defendants allege that the principal was responsible for selecting the teachers for the Options Program, but that the principal chose to make such selection through a committee. Defendants also allege that even teachers who already held positions that would become part of the Options Program had to re-apply and interview for those positions. Still, plaintiff alleges that, although he was interviewed for a position in the Options Program, at least two white female, non-disabled teachers who were hired were not interviewed. Defendant disputes this allegation. Plaintiff was not hired for the Options Program and did not receive another teaching assignment with defendants at Whitney Young. Thereafter, plaintiff was assigned to other schools as a reserve teacher.
 
 
 30
 On July 29, 1991, plaintiff filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been harassed and subjected to unequal terms and conditions of employment from March 1991 to June 1991 and that he was improperly denied a teaching position in the summer of 1991 because of his race, national origin, and disability. Plaintiff also alleged that he had been retaliated against for complaining of the alleged discrimination.
 
 
 31
 In December 1993, plaintiff filed another charge with the EEOC alleging continuing discrimination and retaliation. Plaintiff complained that he: (1) received lower teaching ratings in June 1993; (2) was not selected for the Options Program in August 1993, (3) was not given a teaching assignment in September, 1993, and (4) was denied three paychecks in December 1993.
 
 
 32
 In March 1994, plaintiff filed another charge with the IDHR, repeating the allegations in his 1993 complaint and adding that defendants discriminated against him in December 1993 and February 1994 by assigning him to other schools as a reserve teacher.
 
 
 33
 Plaintiff received a Right to Sue letter on June 29, 1994. On September 9, 1994, plaintiff filed the instant complaint with this court.
 
 DISCUSSION
 I. Standard
 
 34
 Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).
 
 II. Title VII Claims
 
 35
 Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race (or) color." 42 U.S.C. § 2000e-2(a)(1). To set forth an individual case of intentional discrimination under Title VII, a plaintiff has two options: he may satisfy his burden of proof by offering direct evidence of discriminatory intent; or he may demonstrate such intent indirectly by following the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 36
 Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence. Sample v. Aldi, 61 F.3d 544, 547 (7th Cir.1995). Thereafter, the defendant has the burden of articulating a legitimate non-discriminatory reason for the adverse action. Id. Once the defendant meets his burden of production, the presumption of discrimination created by the prima facie case disappears, and the plaintiff must demonstrate that the defendant's proffered reasons are merely a pretext for discrimination. Id. At all times, the plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. Id.
 
 
 37
 Plaintiff alleges that he was discriminated against on the basis of his race, national origin, and gender because: (1) he received "satisfactory" ratings based on allegedly incorrect observation reports; (2) he was harassed from June 1991 to December 1993; and (3) he was not hired for a teaching position in the summer of 1991. Plaintiff also alleges that the aforementioned harassment and teacher ratings were in retaliation for his filing a charge with the IDHR and the EEOC on July 29, 1991. Further, plaintiff alleges that defendants retaliated against him when they declined to hire him for the Options Program in August 1993.
 
 
 38
 A. Discrimination based on Race, National Origin, and Gender
 
 
 39
 To make a prima facie case of discrimination under Title VII, plaintiff must establish by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he performed the job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated employees received more favorable treatment. Hughes v. Brown, 20 F.3d 745, 746 (7th Cir.1994).
 
 
 40
 In Counts I through III, plaintiff alleges that assistant principal Tumas, a white female, made arbitrary and discriminatory observation reports of plaintiff's teaching performance. Plaintiff further claims that, contrary to the collective bargaining agreement ("Agreement") between defendants and the Chicago Teachers Union ("Union") and other school procedures, principal Collins, a black male, copied Tumas' observation reports and concluded in 1991 and 1993 that plaintiff should receive a "satisfactory" instead of an "excellent" teacher rating. Plaintiff avers that similarly situated white female, non-Sudanese, non-disabled teachers were treated more favorably than he concerning class observations and teacher ratings.
 
 
 41
 Additionally, plaintiff alleges that the aforementioned observation reports and teacher ratings were part of a pattern of harassment that he suffered from 1991 to 1993. Plaintiff claims to have suffered other acts of harassment, such as: (1) being wrongly accused of leaving his posts unattended; and (2) having a disproportionate amount of "problem" students assigned to his class.
 
 
 42
 Finally, in Counts I through III, plaintiff alleges that defendants discriminated against him by denying him a summer position in 1991 because similarly situated white female, non-Sudanese, non-disabled teachers were chosen for the position.[2]
 
 
 43
 Defendants admit that plaintiff is in a protected class, but deny that he has met the second, third, and fourth prongs of his prima facie case. Defendants contend that the observation reports are subjective evaluations by the observer, and that teacher ratings are made by the principal based on various criteria. As defendants explain, plaintiff fails to offer any criteria to determine which teachers are similarly situated to him. In fact, the only evidence plaintiff submits to support the fourth prong of his prima facie case is his own statement that similarly situated white female, non-Sudanese, non-disabled teachers were treated more favorably than he.
 
 
 44
 In contrast, defendants compare the records and files of plaintiff to those of other teachers to substantiate the negative references in plaintiff's observation reports and his "satisfactory" ratings. Defendants offer the records of two black male teachers, a deaf white male teacher, and white female teacher, and a deaf white female teacher, all of whom received either "excellent" or "superior" ratings. Defendants allege that all of these teachers had fewer negative notations concerning classroom decorum, productivity, and punctuality than did plaintiff.
 
 
 45
 Defendants further submit, though plaintiff denies, that plaintiff was notified in writing on several occasions that he was required to be at his post. Defendants also explain that many of the alleged "problem" students assigned to plaintiff were also taught by other teachers who did not encounter the same problems with them as did plaintiff.
 
 
 46
 In addition, defendants contend that plaintiff was not hired for a summer position in 1991 because of his unacceptable behavior and inadequate job performance. Defendants explain that 25 teachers applied for 12 summer positions and that the decisions were made pursuant to a collective bargaining agreement. Five white teachers were selected, while five other white teachers were not selected. Eleven women were selected, while eight women were not selected. The record indicates that seven African-American teachers and three hearing impaired teachers were also selected.
 
 
 47
 With respect to plaintiff's teacher ratings, the court agrees with defendants that, even if plaintiff was the only teacher to receive a "satisfactory" rating in 1991 and 1993, that alone would not establish plaintiff's prima facie case. Plaintiff has not articulated, nor has the court found, any reason why the court should treat any teacher who received an "excellent" or "superior" rating as similarly situated to plaintiff in terms of his or her overall teaching performance. Defendants' use of subjective factors (e.g., interpersonal skills) in evaluating and rating a teaching does not, standing alone, demonstrate bad faith. Weihaupt v. American Medical Association, 874 F.2d 419, 429 (7th Cir.1989). The alleged claims of harassment are also insufficient to establish a prima facie case of discrimination. Therefore, on plaintiff's harassment claims in Counts I through III, including those involving the observation reports and teacher ratings, defendants' motion for summary judgment is granted.
 
 
 48
 Moreover, even assuming plaintiff has established a prima facie case on his claims of harassment, defendants have met their burden of production by articulating a legitimate nondiscriminatory reason for observing, rating, and notifying plaintiff of failing to be at his post as they did: plaintiff performed his teaching duties inadequately. Therefore, the only way plaintiff could withstand defendant's motion for summary judgment would be to demonstrate pretext by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This plaintiff has failed to do.
 
 
 49
 "The question is not whether the [employer's performance] ratings were right, but whether the employer's description of its reasons was honest." Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992). Here, plaintiff fails to demonstrate that Tumas' observation reports, Collins' ratings, and the other alleged acts of harassment were based on a discriminatory animus. Defendants admit that not all of the teachers at Whitney Young received evaluation ratings and observations reports that were placed in their personnel files, but deny that this indicates discriminatory animus. Rather, as defendants point out, some white female non-Sudanese non-disabled teachers received evaluations in the years that plaintiff received them, while others did not. Such inconsistency in defendants' evaluation practice may be contrary to the school's policies and procedures but does not establish pretext based on race, gender, or national origin. Similarly, the fact that Collins did not issue a E-1 form to plaintiff before lowering plaintiff's rating from "excellent" to "satisfactory," without more, does not state a claim under Title VII.
 
 
 50
 Finally, with respect to defendants' failure to hire plaintiff in the summer of 1991, Counts I through III also fail to establish a prima facie case. Other black teachers, white teachers, both male and female, disabled and non-disabled, were hired in the summer of 1991. The fact that no other Sudanese teacher may have been hired for a summer position in 1991 cannot establish plaintiff's prima facie case; the record fails to show even one other teacher at Whitney Young who is Sudanese.
 
 
 51
 Plaintiff has also failed to demonstrate pretext in defendants' decision not to hire him in the summer of 1991. The Rules of the Board of Education ("Board") of the City of Chicago mandate that the Board and the principals are responsible for deciding who is best suited to teach its children. As Judge Posner recently reiterated, "[c]ourts refuse to sit in judgment as super-personnel departments over corporate decisions." Brill v. Lante Corp., (7th Cir.1997). Consistent with Title VII, an employer may choose its employees according to its own criteria, so long as such criteria does not discriminate on the basis of race, color, national origin, religion or gender. Plaintiff has failed to create an issue of fact on whether defendants have been honest in their reasons not to hire plaintiff for the summer of 1991 so that a factfinder could find pretext for discrimination based race, gender, national origin or disability. That defendants did not hire someone with the exact same combination of race, national origin, gender, and disability is insufficient to overcome a motion for summary judgment. Defendants' motion on Counts I through III is granted.
 
 B. Retaliation
 
 52
 A prima facie case for retaliation under Title VII includes a showing that: (1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. EEOC v. Home by Hemphill, 1995 WL 683502, at * 2 (N.D.Ill. Nov.16, 1995) (citing Dey v. Colt Const. & Development Co., 28 F.d 1457 (7th Cir.1994)).
 
 
 53
 Plaintiff alleges that he was retaliated against by the aforementioned acts of harassment from 1991 to 1993 and by not being hired for the Options Program because he filed a charge of discrimination with the IDHR and EEOC in July 1991. However, plaintiff fails to present evidence of a causal link between his 1991 complaint and his teacher evaluations, the assignment of "problem" students to his classroom, and the allegedly unfounded accusations of plaintiff not being at his post. Moreover, defendants' decision to interview plaintiff and not offer him a position in the Options Program in August 1993 was over two years after plaintiff filed his first charge of discrimination. Accordingly, defendants' motion for summary judgment on Count IV is granted.
 
 III. "Disability" under the ADA
 
 54
 To set forth a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) he is "disabled" as defined by the ADA; (2) he is qualified for the position in question, with or without reasonable accommodation; (3) he suffered an adverse employment action with regard to the position in question; and (4) a non-disabled person replaced him or was selected for the position that the disabled person had sought. Kocsis v. Multi-Care Management, 97 F.3d 876, 882 (6th Cir.1996).
 
 
 55
 Count V is predicated on same factual allegations that are made in Count IV. Again, plaintiff has failed to establish a prima facie case. The parties agree that plaintiff's disability, deafness, does not affect his ability to do his job, which is, after all, that of a teacher for the hearing impaired. That plaintiff was "harassed" as explained above and not hired for the Options Program in 1993 because he is deaf belies the record. The Board determined that, to meet the goals of the Options Program, it needed both deaf and non-deaf teachers and hired teachers accordingly. Notably, a white female non-disabled teacher with 25 years of service was not selected for the Options program.
 
 
 56
 The court will not second-guess the Board's decision to structure its programs for hearing impaired students as it sees fit, so long as it does not illegally discriminate in making that decision. There is no evidence in the record to support plaintiff's claims of ADA discrimination. Accordingly, defendants' motion for summary judgment on Count V is granted.
 
 CONCLUSION
 
 57
 For the reasons set forth above, the court grants defendants' motion for summary judgment on all counts of plaintiff's complaint.
 
 
 
 [1]
 These figures appear at p. 12 of the opinion below (R. 96)
 
 
 [1]
 The parties disagree about the date on which plaintiff was hired to work at Whitney Young. Defendant states that plaintiff was hired on September 7, 1981. Plaintiff, however, claims that he was hired on September 7, 1979. For purposes of the instant motion, the exact year that plaintiff was hired is not material
 
 
 [2]
 Although the parties present arguments regarding the disparate treatment theory under Title VII with respect plaintiff's claim that she was not hired for the Options Program in 1993, plaintiff's complaint makes such allegations only in Counts IV (retaliation) and V (ADA discrimination). As such, the court addresses the merits of plaintiff's claim relating to that 1993 decision in its discussion of Counts IV and V